FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 29, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RENEE E..,[1]

                 Plaintiff,

      v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                 Defendant.

No.   2:24-cv-00075-EFS

**ORDER RULING ON CROSS MOTIONS FOR REMAND AND REMANDING FOR CALCULATION OF BENEFITS**

Plaintiff Renee E. appeals the denial of benefits by the Administrative Law Judge (ALJ). The parties agree the ALJ erred in his five-step evaluation, but the parties disagree about the appropriate remedy. After reviewing the record and relevant authority, the Court remands the case for calculation of benefits.

/

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS MOTIONS TO REMAND - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## I.   Background

Plaintiff alleges disability due to right hip bursitis, lumbar degenerative disc disease, respiratory disorders, fibromyalgia, arthritis in the hands and wrists, left foot hammertoe impairment, and a vision disorder.

Due to her pain and reduced functioning, Plaintiff protectively filed for disability insurance benefits[2] and supplemental security income benefits on November 15, 2017, alleging an onset date of January 1, 2016.[3] Plaintiff's claims were denied at the initial level and reconsideration levels, and Plaintiff requested an ALJ hearing.[4] After a hearing before ALJ Glenn Meyers on February 4, 2020, ALJ Meyers issued a partially favorable decision on February 26, 2020, finding Plaintiff was disabled as of February 4, 2020, her 55th birthday.[5] The Appeals Council denied review on August 25, 2020.[6] Plaintiff appealed to this Court and the case was remanded by stipulation of the parties on October 29, 2021, with the agreement that the scope of review on remand was limited to the period prior to

---

[2] *See* AR 18. Plaintiff was found ineligible for Title 2 benefits because her date last insured preceded her alleged onset date.

[3] AR 272-274, 279-285, 304.

[4] AR 143, 144, 165, 166.

[5] AR 14-39, 86-115.

[6] AR 1-6.

ORDER RULING ON CROSS MOTIONS TO REMAND - 2

1
2
3
4

February 4, 2020.[7] On February 9, 2022, the Appeals Council issued a remand Order.[8] On November 14, 2023, Plaintiff appeared for a second hearing before ALJ Meyers.[9] On November 22, 2023, the ALJ issued a decision denying Plaintiff's claim.[10] Plaintiff then filed this action.

5

ALJ Meyers found:

6
7

- Step one: Plaintiff had not engaged in substantial gainful activity since the application date of November 15, 2017.

8
9
10
11
12

- Step two: Plaintiff had the following medically determinable severe impairments: right hip bursitis, lumbar degenerative disc disease, respiratory disorders (COPD and asthma), and fibromyalgia.  He also found that Plaintiff's left foot hammertoe impairment, bilateral wrist and hand arthritis, and vision disorder were not severe impairments.

13
14
15
16

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Specifically, the ALJ noted that he considered Listings 1.15, 1.16, 1.18, 3.02, and 3.03.

17

- RFC: Plaintiff had the RFC to perform light work except that:

18

---

19

[7] AR 1267-1270

20

[8] AR 1271-1276.

21

[9] AR 1199-1228.

22

[10] AR 1175-1198.

23

.
> [Plaintiff] is able to sit for one hour at a time, alternating with standing/walking for ten minutes at a time, this pattern repeating throughout the workday.  She can perform frequent reaching, handling and fingering ad occasional stooping and crouching. No crawling, kneeling, or climbing ramps, stairs, ropes, ladders, scaffolds.  No work at heights or in proximity to hazardous conditions.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as an electrical accessories assembler (DOT 729.687-010), small parts assembler (DOT 706.684-022), and agricultural sorter (DOT 529.687-186).[11]

Plaintiff now appeals ALJ Meyers denial of disability and asks for an immediate award of benefits.[12] The Commissioner concedes the ALJ erred when relying upon the vocational expert testimony at step five and erred in his analysis of the medical expert opinions, but the Commissioner asks the Court to remand the matter for further administrative proceedings because there are evidentiary conflicts that must be resolved by the ALJ.[13]

---

[11] AR 1180-1191.

[12] ECF Nos. 1, 6, 9.

[13] ECF No. 80.

ORDER RULING ON CROSS MOTIONS TO REMAND - 4

1

2

## II.    Analysis

### A.    Remand Standard

When a harmful error occurs in the administrative proceeding, remand for

further administrative proceedings is the usual course absent rare circumstances.[14]

Three factors must be satisfied for the court to consider remand for payment of

benefits:

> (1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would be required
> to find the claimant disabled on remand.[15]

When these factors are satisfied, the decision whether to remand for benefits or

further proceedings is within the court's discretion, as it "is a fact-bound

determination that arises in an infinite variety of contexts."[16]

### B.    Remand Analysis – Error at Step Five

The parties agree the second factor is satisfied: the ALJ erred in relying

upon the testimony of the vocational expert (VE) that there were jobs available in

the national economy which Plaintiff could perform.  Specifically, the parties agree

---

[14] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)

(quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

[15] *Id.* at 1101; *Garrison v. Colvin*, 759 F. 3d 995, 1010 (9th Cir. 2014),

[16] *Id.* at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

that the ALJ failed to resolve a conflict between the VE's testimony and the DOT

regarding two of the jobs cited and erred in listing the third job because it had been

withdrawn by the VE, who rescinded her earlier testimony and stated that it did

not fit the hypothetical.  Plaintiff asserts that the total number of jobs in the

national economy cited by the VE is less than the minimum required to meet the

standard for substantial numbers, pursuant to Ninth Circuit law.[17]  Additionally,

Plaintiff asserts that the ALJ erred in not including his finding in the RFC that

Plaintiff would be absent 6 days a year because the VE testimony established that

if Plaintiff had 6 unscheduled absences in a year, she would not be able to maintain

employment.

    1.    <u>Legal Standard</u>

At step five, the ALJ has the burden to identify specific jobs existing in

substantial numbers in the national economy that claimant can perform despite

their identified limitations.[18] At an administrative hearing, an ALJ may solicit

vocational expert testimony as to the availability of jobs in the national economy.[19]

A vocational expert's testimony may constitute substantial evidence of the number

---

[17] ECF No. 7.

[18] *Johnson v. Shalala*, 50 F.3d 1428, 1432 (9th Cir. 1995). *See* 20 C.F.R. § 416.920(g).

[19] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 2011).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

of jobs that exist in the national economy.[20] The ALJ's decision regarding the

number of alternative occupations must be supported by substantial evidence.[21]

At step five, the ALJ considers the claimant's background and RFC, along

with the testimony of the vocational expert, to decide whether the claimant can

perform available jobs notwithstanding his functional limitations.[22] If the

vocational expert's "opinion that the applicant is able to work conflicts with, or

seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ

must ask the expert to reconcile the conflict before relying on the expert to decide if

the claimant is disabled":[23]

> For a difference between an expert's testimony and
> the *Dictionary's* listings to be fairly characterized as a conflict, it must
> be obvious or apparent. This means that the testimony must be at
> odds with the *Dictionary's* listing of job requirements that are
> essential, integral, or expected. This is not to say that ALJs are free to
> disregard the *Dictionary's* definitions or take them with a grain of
> salt—they aren't. But tasks that aren't essential, integral, or expected
> parts of a job are less likely to qualify as apparent conflicts that the

---

[20] *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

[21]*Farias v. Colvin*, 519 F. App'x 439, 440 (9th Cir. 2013) (unpublished). *See Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[22] 20 C.F.R. §§ 416.920(g), 416.960(c); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Hill*, 698 F.3d at 1161.

[23] *Gutierrez v. Colvin,* 844 F.3d 804, 807 (9th Cir. 2016).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ALJ must ask about. Likewise, where the job itself is a familiar one—
like cashiering—less scrutiny by the ALJ is required.[24]

The ALJ—and the reviewing court—are to consider not only the *Dictionary* and

SCO, but also common experience, to determine whether there is an apparent

conflict.[25]

       2.      The ALJ's Findings

    In its February 9, 2022, remand Order, the Appeals Council reasoned as

follows:

> The hypothetical presented to the vocational expert was different
> from the assessed residual functional capacity. The Administrative
> Law Judge relied on a vocational expert's testimony to find that the
> claimant could perform other work (Decision, page 17). However,
> the vocational expert's testimony was offered in response to a
> hypothetical residual functional capacity finding that differed from
> that the Administrative Law Judge ultimately found in the decision
> (Compare Decision, page 8 with Hearing transcript, page 20).
>
> Of note, in the decision, the Administrative Law Judge found the
> claimant had a residual functional capacity to perform a reduced
> range of light work, with limitations that included, in relevant
> part, being absent from work six times per year (Decision, page 8).

---

[24] *Id.* at 808; *see also* SSR 00-4p ("When a [vocational expert] . . . provides evidence

about the requirements of a job or occupation, the adjudicator has an affirmative

responsibility to ask about any possible conflict between that [vocational expert] . .

. evidence and information provided in the [*Dictionary*].").

[25] *Lamear v. Berryhill*, 865 F.3d 1201, 1205–06 (9th Cir. 2017); *see also* SSR 00-4p

(requiring the ALJ to consider the *Dictionary* and SCO); SSR 83-14 (referencing

the *Dictionary* and SCO).

ORDER RULING ON CROSS MOTIONS TO REMAND - 8

1
2
3
4
5
6
7
8
9
10
11

However, when the Administrative Law Judge asked the vocational expert at the hearing whether an individual with this hypothetical residual functional capacity could perform any work, the response was that "it would be marginal" (Hearing transcript, page 20). The vocational expert explained: that six absences a year that are "on an unscheduled or an unplanned basis" would likely be "on the edge;" would not be tolerated by employers; and did not list any jobs that such an individual could perform. (See Hearing transcript, pages 20-21). Nonetheless, the Administrative Law Judge made a step five determination based on the vocational expert's testimony, that the claimant could perform light, unskilled work of Marker, Small Production Assembler, and Bindery Machine Operator (Decision, page 16). However, the vocational expert did not offer this list of jobs in response to the residual functional capacity finding noted in the decision, i.e., a reduced range of light work with six absences per year.  Instead, the vocational expert offered the list of jobs in response to a different hypothetical, which limited the claimant to a reduced range of light work with only five absences per year (Hearing transcript, page 21). On remand, the Administrative Law Judge will clarify the claimant's residual functional capacity.[26]

12
13
14
15

The Appeals council further directed that on remand the ALJ was to give further consideration to Plaintiff's maximum residual functional capacity and articulate his reasoning with specific references to the record, and if warranted obtain supplemental testimony from a vocational expert.[27]

16
17

In his decision, the ALJ articulated the RFC, as listed above.[28]  Notably, the RFC does not provide for work absences, nor did the ALJ ask the VE at the

18
19

20
21
22
23

---

[26] AR 1273-1274.

[27] AR 1274.

[28] AR 1183.

1

2

3

4

5

second hearing any questions regarding work absences.[29]  But the ALJ did

follow the directions of the Appeals Council and made specific findings in the

body of the decision with regard to Plaintiff's maximum residual functional

capacity and cited to specific documents in the record.  The ALJ found the

opinions of the state agency consultants to be persuasive overall, but stated:

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

> Nonetheless, the undersigned does not find the opined work environmental limitations persuasive that the claimant needs avoid concentrated exposure to extreme cold, vibration, pulmonary irritants, and hazards such as machinery and heights (B8A11) because, as explained above, the objective findings, presentations, and the statements of improvement show that the claimant has no significant conditions and/or symptoms that would be affected by these work environmental factors. Moreover, as discussed above, in August 2018, the claimant stated that she is  comfortable being up on her feet for about 20 minutes at a time before she has to rest for 10 minutes and sit for 30 to 45 minutes. She also said she can safely lift between 10 to 20 pounds (B9F3). However, secondary to intermittent antalgic gait and reduced range of motion of the lower extremities, right hip, and lumbar spine (*See e.g.*, B2F5, 30; B5F29, 55; B6F26; B9F5; B14F3; B15F152, 169; B16F10; B17F5, 11, 23; B18F57), the undersigned finds that the  claimant must have sit/stand option provided in the workplace. In addition, due to some decreased sensation of the left knee, foot, and/or leg at times at appointments and examinations (*See e.g.*, B3F40; B14F3-4) and as a precaution to avoid flare-ups of asthma, COPD, and/or pain or other symptoms in upper or lower extremities, the undersigned further limits the claimant to  no climbing of ramps, stairs, ropes, ladders, and scaffolds, no crawling, no kneeling, and frequent handling as well as fingering with bilateral hands. The clinical findings and the claimant's presentations at appointments and examinations do not warrant more restrictive physical limitations. Yet, after considering the claimant's complaints of cognitive limitations due to pain and other symptoms and her reported activities of daily living as discussed in more detail in Finding 4 above (B5E2-4, 6-7; B8E5, 7-11; B9F3; hearing testimony), *the undersigned further limits her to*

21

22

23

---

[29] AR 1183, 1199-1228.

*unskilled, repetitive, routine tasks in two-hour increments and that the claimant is likely to be absent from work six times per year. I add this as a precautionary measure to ensure adequate consideration by the vocational expert and to preclude jobs (if any) that would require continuous and constant concentration throughout the entire workday/workweek . . .*[30]

The Court notes that with the exception of the limitation to unskilled, repetitive, routine tasks, and 6 days absence per year, the limitations articulated and explained by the ALJ in this paragraph are contained in the formulated RFC.

    3.    <u>Relevant Testimony</u>

At the second hearing, ALJ Meyers did not question the VE as to customary tolerances for absences, nor did the VE give any testimony regarding that issue.[31] At the first hearing, however, the ALJ questioned the VE regarding the customary tolerances for absences.[32]  The following interaction took place on the record:

> **ALJ**: And Ms. Stratton, with the documents that you received, did you find any information about previous work? I'm not able to find anything about previous work in the file.
>
> **VE**: Agreed sir.  I did not find any.
>
> **ALJ**: All right.  Ms. Stratton, consider an individual of the same age, education, and vocational background as that of the claimant. In addition, consider an individual who's maximum physical exertional capability is light; who will be provided a sit-stand option in the workplace; who will frequently handle

---

[30] AR 1188-1189.

[31] AR 1199-1228.

[32] AR 106-109.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

and finger; who is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments; who will occasionally stoop and crouch; who will never crawl, kneel, climb ramps, stairs, ladders, ropes or scaffolds; who will be absent from work six times per year.  Are there any jobs in the National Economy that such an individual could perform?

**VE**: In my opinion, sir, it would be marginal.  In my opinion and experience as far as absences, employers that hire individuals at the unskilled level typically allow one days absence per 60 days of work activity or approximately six days per year. However, that kind of goes – get a little fluid in that, if the employer likes the worker, the worker is otherwise responsible and for him to have a good work performance and has dix days of absences, you're not going to immediately terminate her. If the absences are problematic and in particular are on an unscheduled or an unplanned basis, so it's kind of – right in that – on the edge.

**ALJ**: Okay. Our hypothetical number two is exactly the same as number one, except that instead of six absences per year, it's five absences per year. Could the individual perform any work in the National Economy?

**VE**: Yes sir.  Work options would include . . .[33]

---

[33] AR 106-108.

ORDER RULING ON CROSS MOTIONS TO REMAND - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

      4.      <u>Analysis</u>

      Plaintiff argues that the ALJ erred in failing to provide in his hypothetical for the anticipated six days of absence.  She incorrectly argues that the ALJ left the limitation regarding work absences out of the RFC only insofar as she fails to point to the fact that the ALJ articulated a limitation that Plaintiff would be absent for 6 days in the body of his decision but left it out of the RFC.

      The ALJ's language in the body of the decision is specific and fulfills the directive of the Appeals Council that he articulate the limitations and provide specific reference to the exhibits considered.  In the language of the decision, the ALJ has made clear that he found a limitation to 6 days of absence per year and that it was considered with unskilled work and was intended to make allowance for Plaintiff's inability to complete a normal work day or work week.[34] Moreover, the ALJ cited to medical records, written testimony, and hearing testimony which he reasoned supported his assessment of the need for the further limitation.[35]

---

[34] AR 1188-1189.

[35] *Id*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

In its February 4, 2022 Order, the Appeals Council found the testimony of VE Stratton to be valid and credited her opinion that a limitation to six days of absence per year would be work preclusive for a person of Plaintiff's age, education, and work experience.[36]  That testimony was not controverted by the VE in the subsequent hearing, and the Commissioner has raised no argument that VE Stratton's testimony was flawed or not entitled to any weight.[37] Accordingly, the Court credits VE Stratton's testimony that a limitation providing for 6 unplanned absences in a year would render a person of Plaintiff's age, education, and past relevant work unable to engage in substantial gainful activity.

The Court concludes that the record establishes disability insofar as it indicates that because Plaintiff was expected to have 6 unplanned absences per year, she would be unable to sustain full-time employment pursuant to the vocational exert testimony of VE Stratton.  The Court concludes further that remanding the case for further proceedings would serve no useful purpose.  The testimony of VE Stratton is uncontroverted and the ALJ's finding regarding Plaintiff's absences considered in light of that testimony establishes disability.  The Court considered the possibility that the ALJ's finding as to absences was a typographical or writing error and concluded that it was not.  The limitation

---

[36] AR 1271-1276.

[37] ECF No. 8.

ORDER RULING ON CROSS MOTIONS TO REMAND - 14

regarding absences determined by the ALJ although expressed in the body of the

decision but not contained in the RFC, is clearly articulated.  The limitation was

provided in conjunction to a limitation to simple tasks which was also not included

in the RFC.  But both limitations were explained as to the purpose and the

supporting evidence in the record which the ALJ considered in determining those

limitations, and because the ALJ correctly referenced records in Plaintiff's file,

there is no question that he was considering Plaintiff's file and Plaintiff's

limitations.  Thus, the Court concludes that the ALJ's articulated limitation

regarding absences cannot be deemed a typographical error or error in writing and

must be included in its consideration.  Although not contained in the RFC, the

limitation regarding absences constitutes a finding made by the ALJ as to

Plaintiff's residual functional capacity and must be considered in light of the

record.  Accordingly, the Court concludes that Plaintiff has met her burden to

establish disability on the basis of the record and remands for calculation of

benefits.

**C.      Medical Opinion: The Court finds this issue moot.**

Plaintiff argues the ALJ erred in his evaluation of the medical opinions.

Because the Court has remanded the case, this issue is moot.

### III.    Conclusion

Remand for an award of benefits is appropriate. Based upon the

uncontroverted testimony of VE Stratton, a person of Plaintiff's age, education, and

past relevant work history, assessed with the limitations determined by the ALJ,

1

2

would not be able to find and sustain work in the national economy.  There is no useful purpose in remanding for furthering proceedings.[38]

3

Accordingly, **IT IS HEREBY ORDERED**:

4

5

6

1.　　The ALJ's non-disability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for a calculation of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

7

8

2.　　The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and 8,** enter **JUDGMENT** in favor of **Plaintiff**.

9

3.　　The case shall be **CLOSED**.

10

11

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and provide copies to all counsel.

12

**DATED** this 29th day of July 2024.

13

14

_Edward F. Shea_
EDWARD F. SHEA
Senior United States District Judge

15

16

17

18

19

20

21

22

23

---

[38] *See Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009).

ORDER RULING ON CROSS MOTIONS TO REMAND - 16